UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOSEPH BRENNAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:19-cv-00948 |
| TONY MAYS, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Joseph Brennan, a state prisoner, filed this action under 42 U.S.C. § 1983 against the Tennessee Department of Corrections ("TDOC"), TDOC Commissioner Tony Parker, and Warden Tony Mays.[1] Before the Court is Defendants' Motion to Dismiss or for Summary Judgment. (Doc. No. 46.) Plaintiff filed a Response (Doc. No. 50) and Defendants filed a Reply (Doc. No. 52). As explained below, Defendants' Motion will be granted, and this action will be dismissed.

### I. Background

Plaintiff has been in TDOC custody since 2009 after pleading guilty to two counts each of attempted child rape and incest. (Doc. No. 19 ¶ 3.) The events giving rise to this action occurred in August 2019 at Riverbend Maximum Security Institution ("RMSI"). (Id. ¶ 4.) On August 29, prison officials put Plaintiff in administrative segregation while investigating whether he possessed child pornography. (Doc. No. 51 ¶¶ 1–2.) Plaintiff denied doing so (Doc. No. 19 ¶ 4), and the investigation did not result in a disciplinary charge (Doc. No. 47-2 ¶ 7). Plaintiff remained isolated from general population until his transfer to another facility on September 20. (Doc. No. 51 ¶ 10.)

---

[1] Plaintiff filed a Notice of Voluntary Dismissal as to Hilton Hall, Jr., the warden at Hardeman County Correctional Facility. (Doc. No. 42.)

During this period in isolation at RMSI, Plaintiff alleges that he was in "solitary confinement," lived in "filthy conditions," and had "minimal amounts of food and drink." (Doc. No. 19 ¶ 5.) Plaintiff raised issues regarding these conditions through two grievances, multiple letters to Warden Tony Mays, and a letter to Mays from his attorney dated September 16, 2019. (Doc. No. 19 ¶ 6; Doc. No. 19-1; Doc. No. 50-1 at 26–27, 63–64.) Plaintiff's grievances and letters were unanswered. (Doc. No. 19 ¶ 6; Doc. No. 50-1 at 26–27.)

### A. Administrative Segregation—August 29 to September 3, 2019

Upon Plaintiff's arrival in administrative segregation, there was "trash everywhere" and "images of bikini-clad women" on the walls before officers removed "most of" the trash and images. (Doc. No. 50-1 at 19–20.) There were ants, and the floor was "covered in a black film." (Id. at 20.) The first night, Plaintiff received a bed roll, two sheets, a blanket, and a hygiene kit. (Id.) Officers refused Plaintiff's request for a towel, Bible, cup, cleaning supplies, and his sinus and cholesterol medication, saying the refusal was "per the warden." (Id. at 20, 22–23, 40–42, 47.)

The next day, Plaintiff started asking officers to see mental health staff (id. at 48) because he began having dark thoughts, feeling "extremely depressed," and pulling out beard hair due to anxiety. (Doc. No. 50-1 at 22, 26, 47–48.) Officers denied Plaintiff's mental health requests (id. at 22), and Plaintiff did not submit a sick call request or an inmate inquiry to the warden (id. at 44).

On September 3, 2019, Plaintiff's mother met with Warden Tony Mays and told him about Plaintiff's conditions. (Doc. No. 51 ¶ 4.) That night, Plaintiff received his sinus and cholesterol medication, two towels, two washcloths, and a laundry bag. (Doc. No. 50-1 at 23, 47.) Plaintiff was allowed to shower and change clothes, but he was not provided shower shoes, so he showered standing on a plastic bag. (Id. at 23, 27, 47.) Until his transfer on September 20, Plaintiff was denied showers and meals on unspecified dates. (Id. at 27, 43–44.)

2

Case 3:19-cv-00948   Document 53   Filed 11/23/20   Page 2 of 13 PageID #: 364

### B. Protective Custody—September 4 to September 20, 2019

On September 4, 2019, Plaintiff was placed on protective custody (Doc. No. 47-2 ¶ 8), and a mental health representative told Plaintiff that she would "put in a referral to the psych doctor" (Doc. No. 50-1 at 24). Defendants claim that, given Plaintiff's offenses of conviction and the allegation that he possessed child pornography, protective custody was necessary to keep Plaintiff safe from harm by other inmates until he could be transferred to another facility. (Doc. No. 47-2 ¶¶ 9, 11; Doc. No. 51 ¶ 3.) Plaintiff nonetheless requested to return to general population (Doc. No. 47-3 at 3), and he claims that RMSI official denied this request in retaliation for Plaintiff's "asserting his rights under the constitution as well as TDOC policies" (Doc. No. 51 ¶ 3).

On September 5, 2019, Plaintiff received a pair of boxer shorts, a shirt, a pair of socks, his television, and his Bible. (Doc. No. 50-1 at 24–25.) Plaintiff did not receive the rest of his property, "per the warden," though he did receive in-person ministry and communion "a few times." (Id. at 25.) Plaintiff was "restricted to [his] cell 24/7," denied recreation, and allowed half an hour a day of telephone calls. (Id. at 26.)

On September 11, 2019, Plaintiff again told a mental health representative that he had not seen a "psych doctor," and the representative said she would put in another referral. (Id.) On September 18, the representative evaluated Plaintiff for "a mental health treatment plan," and on September 19, Plaintiff saw a doctor who prescribed medications for depression and anxiety. (Id.) The next day, Plaintiff received the first dose of this prescribed medication and was transferred to Hardeman County Correctional Facility ("HCCF"). (Id. at 28.)

### C. HCCF

Since his transfer to HCCF, Plaintiff received some personal property back, but other inmates have stolen from him, threatened him, and assaulted him. (Doc. No. 19 ¶¶ 7–8; Doc. No.

50-1 at 28–29, 50–54.) HCCF officials have also failed to provide his prescription medications on unknown dates. (Doc. No. 19 ¶ 7; Doc. No. 50-1 at 28–30, 36.) Plaintiff alleges that he "has not been restored to the privileges he had earned" (Doc. No. 19 ¶ 7), clarifying in his deposition that these privileges include holiday meals, more outdoor recreation, less restrictive family visitation, and a better paying job at RMSI (Doc. No. 50-1 at 54–55).

### D. This Lawsuit

Plaintiff sues Warden Tony Mays in his individual and official capacities, and Commissioner Tony Parker in just his official capacity. (Doc. No. 19 at 2.) Plaintiff asserts that Defendants deprived him of his substantive and procedural due process rights under the Fifth and Fourteenth Amendments by placing him in solitary confinement. (Id. at 6.) He also asserts that Defendants violated his Eighth Amendment right to be free from inhumane conditions of confinement[2] and deliberate indifference to serious psychological needs. (Id.) Plaintiff requests monetary damages and an injunction "prohibiting the Defendants from placing the Plaintiff in solitary confinement without full compliance with TDOC policies in the future." (Id. at 7.)

## II. Analysis

Defendants filed a Motion to Dismiss or for Summary Judgment. As explained below, the Court will grant Defendants' motion to dismiss as to the TDOC, Defendant Parker, and Defendant Mays in his official capacity. As to Plaintiff's individual-capacity claims against Mays, the Court will grant summary judgment on the merits, so it is unnecessary to address Defendants' motion to dismiss them.

---

[2] Plaintiff does not clearly spell out a conditions-of-confinement claim in the "Causes of Action" section of the Amended Complaint. (See Doc. No. 19 at 6.) Nonetheless, Defendants clearly had "fair notice" of such a claim because they identify and brief it. (Doc. No. 48 at 10–12); Mills v. Barnard, 869 F.3d 473, 484 (6th Cir. 2017) (citations omitted) ("[C]ourts are generous in their interpretation of a complaint to identify causes of actions so long as it provides fair notice to the defendant of the claim.").

4

Case 3:19-cv-00948   Document 53   Filed 11/23/20   Page 4 of 13 PageID #: 366

### A.  Motion to Dismiss

When a defendant files a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded factual allegations as true, and examine[s] whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Solo v. United Parcel Serv., 819 F.3d 788, 793 (6th Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

#### 1.  Dismissal of TDOC as a Party

Defendants move to dismiss the TDOC because it is not a proper party under Section 1983. (Doc. No. 48 at 2–3.) Defendants are correct. Hix v. Tenn. Dep't of Corr., 196 F. App'x 350, 355 (6th Cir. 2006) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989)) ("The TDOC is not a 'person' within the meaning of § 1983, and is therefore not a proper defendant.").

Citing Ex Parte Young, Plaintiff argues that the TDOC is an appropriate defendant because he is requesting certain injunctive relief. (Doc. No. 50 at 5 (citing Ex Parte Young, 209 U.S. 123 (1908)). The Ex Parte Young doctrine "allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations." Boler v. Earley, 865 F.3d 391, 412 (6th Cir. 2017) (citing S & M Brands, Inc. v. Cooper, 527 F.3d 500, 507 (6th Cir. 2008)). But this doctrine does not allow plaintiffs to bring claims against states or state agencies themselves. Puckett v. Lexington-Fayette Urban Cnty. Gov't, 833 F.3d 590, 598 (6th Cir. 2016) (citing S & M Brands, 527 F.3d at 507–08) ("The Ex

5

parte Young doctrine applies when the lawsuit involves an action against state officials, not against the state itself."). Thus, the TDOC will be dismissed as a party.

### 2. Dismissal of Official-Capacity Claims

Because they are both TDOC employees, the Court considers Plaintiff's official-capacity claims against Defendants Parker and Mays together. See Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."). Plaintiff requests an injunction "prohibiting the Defendants from placing the Plaintiff in solitary confinement without full compliance with TDOC policies in the future." (Doc. No. 19 at 7.) Defendants contend that Plaintiff's transfer to HCCF rendered this request moot. (Doc. No. 48 at 5–7.) The Court agrees.

"[A] claim for injunctive relief is generally moot once a prisoner transfers from the complained-of prison to another prison." Anderson v. Morgan Cnty. Corr. Complex, No. 15-6344, 2016 WL 9402910, at *2 (6th Cir. Sept. 21, 2016) (citing Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996)). There is an exception to this general rule where the prisoner "faces the potential for future harm" at the second prison based on actions taken at the first prison. See Colvin v. Caruso, 605 F.3d 282, 295–96 (6th Cir. 2010). "Underlying [this] rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the result of the challenged official conduct." Proctor v. Applegate, 661 F. Supp. 2d 743, 762 (E.D. Mich. 2009) (quoting Kime v. Jones, No. 4:06-cv-28, 2007 WL 586793, at *3 (W.D. Mich. Feb. 21, 2007)).

Here, Plaintiff alleges that prison officials improperly placed him in solitary confinement at RMSI, but he does not allege that this placement carried over to or impacted his confinement at HCCF. Indeed, Plaintiff does not allege that he has been placed in solitary confinement at HCCF

6

at any time, and any concern of future confinement in isolation without appropriate process is purely speculative. Accordingly, Plaintiff's transfer to HCCF rendered his request for injunctive relief moot, and Plaintiff's official-capacity claims against Defendants Parker and Mays must be dismissed. With no other claim against Parker, he will be dismissed as a party.

### B. Motion for Summary Judgment

The Court will grant summary judgment to a moving party that shows "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Peffer v. Stephens, 880 F.3d 256, 262 (6th Cir. 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court "must ultimately decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Burgess v. Fischer, 735 F.3d 462, 471 (6th Cir. 2013) (quoting Anderson, 477 U.S. at 251–52). In doing so, the Court "draw[s] all reasonable inferences in the light most favorable to the non-moving party." Davis v. Gallagher, 951 F.3d 743, 747 (6th Cir. 2020) (citing Anderson, 477 U.S. at 251–52).

#### 1. Fourteenth Amendment

Plaintiff asserts that Defendant Mays violated his substantive and procedural due process rights under the Fifth and Fourteenth Amendments. As an initial matter, the Court analyzes this claim under just the Fourteenth Amendment because the Fifth Amendment's due process guarantee "applies to federal, not state, officials." Palmer v. Schuette, 768 F. App'x 422, 426–27 (6th Cir. 2019) (citing Scott v. Clay Cnty., 205 F.2d 867, 873 n.8 (6th Cir. 2000)). And because Plaintiff's "substantive due process claim is duplicative of his procedural due process claim," the Court analyzes these claims together under the rubric of procedural due process. Benson v. Osborn,

7

2018 WL 1628926, No. 16-1439, at *2 (6th Cir. Mar. 27, 2018); Kiser v. Kamdar, 831 F.3d 784, 791 (6th Cir. 2016) (quoting Albright v. Oliver, 510 U.S. 266, 273 (1994)) ("The Supreme Court has repeatedly held that where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing such a claim.'").

Turning to the merits, Plaintiff "must first demonstrate that he was deprived of 'life, liberty, or property' by government action." Heard v. Caruso, 351 F. App'x 1, 7 (6th Cir. 2009) (citing Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). Although "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement," Wilkinson, 545 U.S. at 221–22 (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)), prisoners retain a liberty interest in avoiding conditions of confinement that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 223 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). In this case, however, Plaintiff has not demonstrated that his challenged conditions in isolation at RMSI rose to this level.

To "implicate due process considerations," a prisoner's confinement in more restrictive conditions typically must be "prolonged or indefinite." Bishawi v. Ne. Ohio Corr. Ctr., 628 F. App'x 339, 344 (6th Cir. 2014) (citing Wilkinson, 545 U.S. at 224). Here, Plaintiff was in isolation at RMSI for a total of twenty-two days—six days in administrative segregation and then sixteen days on protective custody. This period of time is simply too brief to establish a constitutionally protected interest. See id. (holding that sixty-nine days in administrative segregation did "not rise to a procedural due process violation"); Joseph v. Curtin, 410 F. App'x 865, 868 (6th Cir. 2010) (same, for sixty-one days); cf. Harden-Bey v. Rutter, 524 F.3d 789, 793 (6th Cir. 2008) (holding

8

Case 3:19-cv-00948   Document 53   Filed 11/23/20   Page 8 of 13 PageID #: 370

that three years in administrative segregation without a definite end-point or periodic review may be atypical and significant).

Plaintiff also cannot avoid summary judgment by pointing to his loss of privileges when transferred from RMSI to HCCF.[3] At this juncture, the Court accepts as true that HCCF is a less secure facility where Plaintiff has no holiday meals, less outdoor recreation, more restrictions on visitation, and a lower paying job. But "a prison inmate does not have a liberty interest in transfer from one prison to another 'for whatever reason or for no reason at all,' within the State or to another State, regardless of differing conditions in the prisons." Bazzetta v. McGinnis, 430 F.3d 795, 804 (6th Cir. 2005) (quoting Meachum, 427 U.S. at 228). "This is true even though such a transfer operates as a 'real hardship' on the inmate." Id. (quoting Montanye v. Haymes, 427 U.S. 236, 242 n.4 (1976)).

Accordingly, because Plaintiff has not carried his threshold burden of demonstrating that he was deprived of a constitutionally protected liberty interest that entitled him to due process, Defendants will be granted summary judgment on this claim.

### 2. Eighth Amendment

Plaintiff asserts that Defendant Mays violated his Eighth Amendment right to be free from inhumane conditions of confinement and deliberate indifference to serious psychological needs.

---

[3] The Court notes Plaintiff's isolated deposition testimony that he improperly lost sentence credits because of his placement in administrative segregation at RMSI, and that these credits should be returned to him. (Doc. No. 50-1 at 30–31.) The operative complaint does not include any reference to sentence credits, and "[i]t is improper to assume that . . . a defendant violated laws in ways not alleged" in the complaint. Becker v. Montgomery, 43 F. App'x 914, 917 (6th Cir. 2002) (citing Cline v. Rogers, 87 F.3d 176, 184 (6th Cir. 1996)). Moreover, Plaintiff is represented by counsel, and counsel neither requested permission to file an amended complaint including this potentially relevant assertion, nor referenced it in response to Defendants' motion for summary judgment. The Court, therefore, does not consider Plaintiff's asserted loss of sentence credits in evaluating his procedural due process claim. See Johnson v. Stine, No. 99-2462, 2000 WL 1359630, at *1 (6th Cir. Sept. 14, 2000) (citing Cline, 87 F.3d at 184) ("In contemplating both summary judgment and dismissal for failure to state a claim the court is required to construe the allegations in the plaintiff's favor, but it is not proper to assume a plaintiff could prove facts which he has not alleged.").

9

These claims have objective and subjective components. Richmond v. Settles, 450 F. App'x 448, 455 (6th Cir. 2011) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)); Comstock v. McCrary, 273 F.3d 693, 702–03 (6th Cir. 2003). The Court will address each claim in turn.

### a. Conditions of Confinement

The objective component of this claim requires a plaintiff to demonstrate "that he has been deprived 'of the minimal civilized measure of life's necessities.'" Harden-Bey, 524 F.3d at 795 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Thus, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Richmond v. Settles, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987)). "The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs." Id. (citing Farmer, 511 U.S. at 834).

Plaintiff faced his harshest conditions for the first six days in isolation—from August 29, 2019, when he was placed in administrative segregation, until the evening of September 3, after his mother met with Warden Mays. During that time, Plaintiff was in an isolated cell with ants, black film on the floor, and no sinus or cholesterol medication, cleaning supplies, towel, cup, or Bible. Plaintiff also was not allowed to shower, and he may have been denied food or drink on unspecified occasions. Plaintiff testified in his deposition that RMSI officials denied his requests for these items on Warden Mays's instructions. Even assuming, based on this testimony, that Plaintiff satisfies the subjective component of this claim against Warden Mays for this initial six-day period, Plaintiff has not satisfied the objective component.

In general, "placement in segregation" does not support an Eighth Amendment claim because it is "a routine discomfort that is a part of the penalty that criminal offenders pay for their

offenses against society." Harden-Bey, 524 F.3d at 795 (quoting Murray v. Unknown Evert, 84 F. App'x 553, 556 (6th Cir. 2003)). The Sixth Circuit has specifically held that "deprivation of a shower and other personal hygiene items" for the length of time experienced by Plaintiff—six days—"is not actionable conduct." Richmond, 450 F. App'x at 455 (citations omitted). And although it is concerning that Plaintiff went six days without sinus and cholesterol medication, Plaintiff does not present any evidence that his health suffered from this delay. See Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 898 (6th Cir. 2004) (citing Napier v. Madison Cnty., Ky., 238 F.3d 739, 742 (6th Cir. 2001)) ("[W]here the prisoner's affliction is seemingly minor or non-obvious[,] . . . medical proof is necessary to assess whether the delay caused a serious medical injury."). In short, despite his displeasure with the conditions in administrative segregation, Plaintiff does not present evidence that these conditions deprived him of a basic human need. See Alexander v. Vittitow, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017) (citing Bishawi, 628 F. App'x at 345–46) ("Temporary loss of privileges and confinement in segregation—without any allegations that basic human needs were not met—cannot establish an Eighth Amendment claim.").

Moreover, for the sixteen-day period after administrative segregation, Plaintiff fails to establish either the objective or subjective component. Objectively, Plaintiff's conditions improved on September 3, 2019, when he could take a shower and received his sinus and cholesterol medication, towels, and a laundry bag. They improved again on September 5, after Plaintiff was reclassified to protective custody and received clothes, a television, and a Bible. Again, although Plaintiff found his conditions unpleasant, he has not demonstrated that he was deprived of any basic human need for the sixteen-day period after reclassification to protective custody through transfer to HCCF on September 20. See Richmond, 450 F. App'x at 455 (citing

Wilson, 501 U.S. at 304) ("[T]he totality of the circumstances do not otherwise implicate the prohibition against cruel and unusual punishment because [plaintiff] has not demonstrated that he was deprived of an identifiable human need in combination with his conditions of confinement.").

Subjectively, Plaintiff's improved conditions after his mother met with Warden Mays on September 3, 2019, reflect that Mays was not deliberately indifferent. Plaintiff recognizes that "some conditions improved" at that point, while maintaining that the overall conditions "were still horrible." (Doc. No. 51 ¶ 5.) Nonetheless, Plaintiff has not demonstrated that Mays "acted wantonly and recklessly disregarded a substantial risk of harm to [his] health or safety" from September 3 through Plaintiff's transfer. See Grissom v. Davis, 55 F. App'x 756, 758 (6th Cir. 2003); Hestle v. Bauman, No. 16-2620, 2017 WL 5591495, at *2 (6th Cir. Mar. 23, 2017) (citing Farmer, 511 U.S. at 844–45) (holding that prisoner failed to demonstrate deliberate indifferent to complained-of conditions where "the defendants' response to the problem was reasonable, even if it did not immediately fix the issue").

Accordingly, Defendants are entitled to judgment as a matter of law on this claim.

### b. Deliberate Indifference to Psychological Needs

Finally, a prisoner's Eighth Amendment right to be free from deliberate indifference to serious medical needs extends to "psychiatric needs." Richmond v. Huq, 885 F.3d 928, 937 (6th Cir. 2018) (citing Comstock, 273 F.3d at 702). The objective component of this claim requires a plaintiff to demonstrate "that the medical need at issue is 'sufficiently serious.'" Comstock, 273 F.3d at 702–03 (quoting Farmer, 511 U.S. at 834). "The subjective component requires a showing that the 'official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety,'" meaning that the official "'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Richmond,

885 F.3d at 939 (quoting Farmer, 511 U.S. at 837). Here, even assuming that Plaintiff's asserted anxiety, dark thoughts, and extreme depression were a sufficiently serious psychological need, Plaintiff fails to establish the subjective component.

On September 4 and 11, 2019, a mental health representative referred Plaintiff to a psychiatric doctor. On September 18, the representative evaluated Plaintiff for a mental health treatment plan, and the next day, a psychiatric doctor prescribed Plaintiff medication for anxiety and depression. Plaintiff may be displeased with this level of treatment, but it does not rise to the level of deliberate indifference. See Comstock, 273 F.3d at 703 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)) ("When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation."); see also Powell v. Washington, 720 F. App'x 222, 229 (6th Cir. 2017) (rejecting claim for deliberate indifference to psychological needs resulting from confinement in administrative segregation where the prisoner "received visits from mental health counselors" and "was prescribed medication to treat his mental disorders").

Accordingly, Defendants will be granted summary judgment on this claim.

### III. Conclusion

For these reasons, Defendants' Motion to Dismiss or for Summary Judgment (Doc. No. 46) will be granted, and this action will be dismissed.

An appropriate Order is filed herewith.

*(signature)*
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE